ANTWAN CAMERON,

        Petitioner,

vs.                                Case No.:   3:14-cv-469-J-34JRK
                                                        3:12-cr-33-J-34JRK

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Antwan Cameron's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, (Civ. Doc. 1, Motion to Vacate).[1] The United States has responded (Civ. Doc. 4, Response), and Cameron has replied (Civ. Doc. 7, Reply). Cameron also filed an Amended Motion to Vacate (Civ. Doc. 10, Amended Motion to Vacate), to which the United States has responded as well (Civ. Doc. 12, Response to Amended Motion).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing

---

[1] Citations to Cameron's criminal case file, United States of America v. Antwan Cameron, 3:12-cr-33-J-34JRK, are denoted as "Crim. Doc.___." Citations to Cameron's civil § 2255 case file, 3:14-cv-469-J-34JRK, are denoted as "Civ. Doc. ___."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, the Motion to Vacate is due to be denied.

## I.     Background

Cameron stands convicted of one count of making a false or fictitious statement while attempting to acquire a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

The Eleventh Circuit summarized the facts of the offense as follows:

> In November 2011, Defendant Cameron and Allison Gornail visited Shooters of Jacksonville ("Shooters"), a store that sells firearms and ammunition. Cameron and Gornail spoke with the store manager. Gornail expressed an interest in purchasing an AK–47 assault rifle for herself.
>
> The store manager suspected that Gornail was actually purchasing the firearm for Cameron, and not for her own personal use, because Gornail did not know why she was buying the firearm, whereas Cameron was very knowledgeable about the firearm. After Cameron attempted to pay for the firearm, the store manager asked Cameron to fill out a Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473 ("ATF form"), which has to be completed before an individual can buy a firearm.
>
> The ATF form requires a buyer of a firearm to provide his name and address and state whether the buyer is the "actual transferee/buyer" of the firearm. The ATF form also includes a warning, which provides that "[y]ou are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.

---

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."

Question 11i of the ATF form asks whether the buyer, here Defendant Cameron, has a conviction for a misdemeanor crime of domestic violence. The instructions for question 11i of the ATF form set forth the statutory definition of a "misdemeanor crime of domestic violence." If a buyer represents on the ATF form that he has a conviction for a misdemeanor crime of domestic violence, the buyer is disqualified from buying a firearm.

In filling out the ATF form, Defendant Cameron represented that he, and not Gornail, was the actual transferee/buyer of the AK–47. Cameron also represented that he had never been convicted in a court of a misdemeanor crime of domestic violence. Finally, Cameron certified that his answers on the ATF form were true and correct and that he read and understood the notices, instructions, and definitions on the form.

After Defendant Cameron completed the form, Shooters conducted a background check of Cameron through the Florida Department of Law Enforcement ("FDLE"). The FDLE reported that Cameron was ineligible to buy the firearm. Thus, Shooters could not sell Cameron the firearm. Once Cameron and Gornail left Shooters, the store manager notified law enforcement about Cameron's attempt to purchase the AK–47.

United States v. Cameron, 547 F. App'x 942, 943-44 (11th Cir. 2013) (emphasis in original)

(footnotes omitted). As it turned out, Cameron was ineligible to buy a firearm because he

did have a prior conviction for a crime of domestic violence, contrary to his answer on ATF

Form 4473.

Thereafter, a grand jury sitting in the Middle District of Florida charged Cameron

with one count of making a false or fictitious statement to a federally licensed firearms

dealer. Cameron pled not guilty and proceeded to trial.

At Cameron's trial, a government witness testified that, in November 2004, Cameron pled guilty to actually and intentionally touching or striking a family or household member, against her will or intentionally causing bodily harm to that person, in violation of Fla. Statutes §§ 784.03 and 741.28. There was no objection to this testimony. The government introduced into evidence the information charging Cameron with domestic battery and the judgment.

Later at trial, Cameron testified in his own defense that, in November 2011, Gornail asked for his assistance in purchasing a firearm for her protection. He went with Gornail to Shooters to assist her in purchasing a firearm. Cameron also intended to pay for the firearm Gornail selected. At the store, once Cameron indicated that he would pay for the firearm, a Shooters employee asked Cameron to fill out an ATF form. Cameron testified that, on the ATF form, he represented that he was the actual transferee/buyer of the firearm because he believed that, if he did not make that representation, Shooters would not complete the firearm sale.

Cameron further testified that, on the ATF form, he represented that he did not have a prior conviction for a misdemeanor domestic violence conviction because the documents in his possession showed that he only had a prior conviction for battery, not <u>domestic</u> battery. Furthermore, prior to pleading guilty to what he now knew was domestic battery, he only "vaguely" remembered the judge explaining to him the details about the charges against him.

On cross-examination, the government asked Cameron about the events of October 6, 2004, the date of the domestic battery. At side bar, Cameron's counsel objected to the government eliciting the underlying details of the domestic battery offense because Cameron had admitted he committed the battery. Cameron's counsel stated that it was "irrelevant and overly prejudicial to get into the details of the battery." The district court requested that the government first ask questions that related to [Mikeisha] Frison's relationship with Cameron and whether Cameron admitted to having committed the battery. The court stated that, depending on Cameron's answers, the government might not need to address the underlying conduct that constituted the battery. Following the court's resolution of his objection, Cameron stated "[o]kay."

The government thus asked Cameron whether he recalled committing a battery on Mikeisha Frison on October 6, 2004, and he answered affirmatively. Cameron clarified that he did not know at the time of the 2011 attempted firearm purchase that he had committed a <u>domestic</u> battery, because he thought that he and Frison had to be "official boyfriend and girlfriend" for his actions toward Frison to constitute domestic battery.

Cameron affirmed that he now knew, "if you batter the mother of your child, that ... is domestic battery." At the time of the battery, Cameron, however, was uncertain as to whether he was the father of Frison's child. Cameron claimed that, although he had never contested paternity, he had doubts as to whether he was actually the child's father because Frison had cheated on him. Nevertheless, on the date of the battery, Cameron knew that, "at least, according to the child's mother, the birth certificate and anybody else who had ever been told," he was the father of Frison's child. The government then

asked whether Frison was pregnant with Cameron's second child at the time of the battery, and Cameron responded affirmatively.

Cameron also testified that he recalled being charged with two offenses in connection with the October 2004 incident. Cameron conceded that his public defender offered Cameron a plea bargain with respect to one of the charges, which was a felony charge, but he did not want to take that offer. The following exchange then occurred between the government and Cameron, which led to this discussion of the details of the battery:

> Q. And why didn't you want to take the offer?
> A. At the time, I felt since I called the police, that I wasn't wrong. But apparently in those situations, I'm wrong, regardless of who actually called the police.
> Q. You're not denying that you struck Mikeisha Frison on October 6th, 2004, are you?
> A. I'm not denying it. She had a bruise. I can't say when it became apart, but she had a bruise and, subsequently, we were struggling at a point.
> Q. Okay. You were struggling and fighting with her?
> A. Yes, sir.

Cameron, however, did not subsequently object to the government's questions or move to strike his responsive testimony….

Cameron, 547 F. App'x at 944-46 (emphasis in original).

After the close of evidence, the Court instructed the jury that it was to consider Cameron's prior battery conviction only to determine "whether the elements of the offense charged against the Defendant in the indictment have been established. The fact that the Defendant was previously found guilty of another crime does not mean that he committed the crime for which he is on trial here." (Crim. Doc. 52, Final Jury Instructions at 14). The Court further advised the jury that it "must not consider this prior conviction for any purpose other than to establish the existence of the prior conviction." (Id.).

At the conclusion of its deliberations, the jury found Cameron guilty of the offense charged. At sentencing, the Court determined that Cameron's total offense level was 22

and his Criminal History Category was III under the United States Sentencing Guidelines.[4] This calculation yielded an advisory sentencing range of 51 to 63 months in prison. The Court sentenced Cameron to a term of 60 months' imprisonment, followed by a three-year term of supervised release. (Crim. Doc. 57, Judgment).

Cameron appealed his conviction and sentence. On direct review, Cameron argued that (1) this Court abused its discretion by allowing the government to introduce the details of his 2004 domestic battery conviction because those details were irrelevant and unduly prejudicial, and (2) this Court erred in applying the obstruction-of-justice enhancement. The Eleventh Circuit rejected both arguments, and affirmed Cameron's conviction and sentence. Cameron, 547 F. App'x at 947-50. Cameron did not petition the Supreme Court for certiorari review.

## II. Motion to Vacate

Cameron timely filed his Motion to Vacate on or about February 15, 2014. See Motion to Vacate at 13. In the Motion, Cameron essentially raises five arguments: (Ground 1(a)) that counsel chose an "impossible defense," and counsel instead should have argued that Cameron was "compelled and coerced to complete ATF Form 4473"; (Ground 1(b)) that counsel failed to communicate a plea offer to him; (Ground 1(c)) that counsel was ineffective for failing to call Ms. Gornail as a witness; (Ground 1(d)) that counsel failed to

---

[4]     Cameron's offense level consisted of a base offense level of 20 under U.S.S.G. § 2K2.1, plus a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Cameron, 547 F. App'x at 946. The Court gave Cameron the obstruction-of-justice enhancement because he sent a Facebook friend request to one of the jurors in the middle of the trial, and as an alternative and independent basis, because Cameron falsely testified that (1) Ms. Gornail was the one actually purchasing the firearm, and (2) he was unaware that he had a prior domestic violence conviction. Id. at 947.

object to the admission of evidence (though Cameron does not specify what evidence); and (Ground 2) that the Court erred by not giving a jury instruction "that would not prejudice the Petitioner in regards to his prior conviction." Motion to Vacate at 4-5, 17-25.

On February 17, 2017, Cameron finished serving his term of imprisonment and was released from prison. As such, the Court asked Cameron whether he still wished to prosecute his Motion to Vacate. At first, Cameron did not respond, but he eventually answered the Court's inquiry by filing an Amended Motion to Vacate, which the Court accepted. (See Civ. Doc. 10, Amended Motion to Vacate; Civ. Doc. 11, Order Directing United States to Respond). In the Amended Motion to Vacate, Cameron vaguely states that at a side bar, he was asked whether he had acquired information about his criminal history that would prove he had researched his ability to purchase a firearm, but that his "attorney disagreed to evidence." Amended Motion to Vacate at 4. Cameron does not elaborate further. Cameron asks that the Court vacate his conviction, remove his charges from the record, and terminate supervised release.

### III. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant

relief through collateral attack. <u>United States v. Addonizio</u>, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. <u>United States v. Teague</u>, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Weeks v. Jones</u>, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. <u>Weeks</u>, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Id.</u> To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Strickland</u>, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance

deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## A. Ground 1(a): Counsel's Choice of Trial Strategy

Cameron complains that his attorney selected a poor trial strategy by contesting whether Cameron knew he had a prior conviction for a domestic battery, and thus, whether he knowingly made a false statement.[5] Cameron now claims that a better strategy would have been to argue that the store manager of Shooters "compelled and coerced" him to complete the ATF Form 4473.

Decisions on matters of trial strategy are entitled to great deference. See, e.g., Chandler v. United States, 218 F.3d 1305, 1318 n.22 (11th Cir. 2000) ("How a lawyer spends his inherently limited time and resources is also entitled to great deference by the court."); McNeal v. Wainwright, 722 F.2d 674, 676-77 (11th Cir. 1984) (counsel not ineffective for conceding manslaughter in closing argument). A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1240 (11th Cir. 2010) (quoting Strickland, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts

---

[5]    "[T]o establish a violation of § 922(a)(6), the Government must prove beyond a reasonable doubt that: (1) the defendant knowingly made; (2) a false or fictitious written statement in connection with the purchase of a firearm; (3) intended to deceive or likely to deceive a licensed firearms dealer; (4) and the false statement was a fact material to the lawfulness of the sale or disposition of the firearm. United States v. Tubbs, 652 F. App'x 750, 755 (11th Cir. 2016) (citing United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003)).

9

relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. (quoting Strickland, 466 U.S. at 690-91). Moreover, "[i]n reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler, 218 F.3d at 1316 (quoting Strickland, 466 U.S. at 689).

Cameron's complaint about counsel's trial strategy – i.e., the decision to challenge whether Cameron knew that his prior battery conviction was for a domestic battery – fails to overcome the strong presumption that counsel's performance was the product of a reasonable strategic decision. Indeed, counsel appears to have made the best argument reasonably available in the face of overwhelming evidence. As the Court remarked after the trial:

> [S]ometimes counsel get more to work with in the cases that they either are assigned to or accept, and unfortunately for Mr. Shorstein [Cameron's attorney], I think you've done the best job you can possibly do with really bad facts because when the best argument is, "Well, it was a really dumb plan and it was destined to failure," the fact that the defendant didn't come up with a smart way to commit the crime or that he could have done it in a smarter way really doesn't – doesn't do much.
>
> But in Mr. Shorstein's defense, I don't know what else – what other argument there is. It was – it was entirely obvious, watching the video, that Mr. – and from his testimony that Mr. Cameron knew that he couldn't buy the firearm, and that's why the – there was all this effort to suggest that it was for Ms. Gornail, a personal protection weapon, an assault rifle, multi-capacity, and two large magazines of ammunition. That's not a – it strains credulity to suggest that that was being purchased for Ms. Gornail as a personal protection device – weapon.
>
> So it's obvious that Mr. Cameron knew what he was doing at the time and was intentionally attempting to violate the law. And could he have done it a smarter way? Sure. And would it have been better if, when they asked him

> to fill out the form, he just said, "No, changed my mind," and walked out?
> Absolutely. But there isn't any question about whether Mr. Cameron knew
> what he was doing and that it was wrong at the time that he did it.

(Crim. Doc. 70 / Civ. Doc. 4-1, Sentencing Transcript at 48-49).

Cameron chose to go to trial on the theory the defense presented, and he hasn't even suggested a better strategy that counsel could have pursued successfully. Cameron contends that counsel should have argued that the Shooters store manager "coerced" and "compelled" him to fill out ATF Form 4473, but that argument is frivolous. First, there is no evidence that anyone "compelled" or "coerced" Cameron to fill out the form. Cameron was free to walk away from the transaction and not complete the paperwork.[6] Defense counsel suggested at one point that Cameron might have been set up, but the Court responded that "there is no entrapment defense here. There was no evidence that would have supported an entrapment defense[.]" (Crim. Doc. 67, Trial Transcript Volume III at 27). Indeed, when Cameron completed ATF Form 4473, he "certified that his answers on the ATF form were true and correct and that he read and understood the notices, instructions, and definitions on the form." Cameron, 547 F. App'x at 944. As such, there is no support for Cameron's theory that he was somehow coerced, tricked, or entrapped into completing the ATF form. Second, even if Cameron had somehow been "compelled" to fill out ATF

---

[6]    Cameron implies that racial prejudice might have motivated the store manager to ask him to complete ATF Form 4473. Motion to Vacate at 18. Putting aside the fact that this has no bearing on Cameron's decision to lie on the form, there is no support for this assertion. The store manager had an objective, well-founded suspicion that Ms. Gornail was not the true buyer of the assault rifle and that a "straw purchase" was in the works. Ms. Gornail did not even know why she was buying the firearm, whereas Cameron was highly knowledgeable about the weapon. Cameron, 547 F. App'x at 943. Ms. Gornail was not paying for the gun, Cameron was. Id. And the store manager only asked Cameron to complete ATF Form 4473 after he attempted to pay for the firearm. Id. at 943-44. Thus, Cameron points to no evidence that racial animus played a role in the manager's decision to ask Cameron to fill out the ATF form.

Form 4473, Cameron "was not convicted for filling out the ATF form; he was convicted of lying on the form." Response at 9 (emphasis in original). Again, Cameron offers no explanation or evidence suggesting how he was "compelled" or "coerced" to lie on the form. Cameron's best explanation for giving a false answer was that he simply did not know that one of his prior convictions was for domestic battery. Counsel pursued that theory valiantly, but the jury rejected it.

Cameron's allegations fail to show that counsel's choice of trial strategy was objectively unreasonable, so as to amount to deficient performance under Strickland. Therefore, relief under Ground 1(a) is due to be denied.

### B. Ground 1(b): Whether counsel failed to communicate a plea offer

In Ground 1(b), Cameron alleges that counsel was ineffective because he failed to communicate a plea offer. Cameron claims that had his attorney communicated a plea offer, he would have taken it rather than going to trial. Motion to Vacate at 20-21.

"The Supreme Court has long recognized that Strickland 's two-part inquiry applies to ineffective assistance of counsel arising out of the plea process." Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). Indeed, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 133, 132 S. Ct. 1399, 1408 (2012). Failure to do so constitutes deficient performance. Id.

> [I]n order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms";

and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

Osley, 751 F.3d at 1222 (quoting Lafler v. Cooper, 566 U.S. 156, 132 S. Ct. 1376, 1385 (2012); citing Frye, 132 S. Ct. at 1409).

Here, Cameron's allegations are insufficient to establish deficient performance or prejudice because Cameron fails to describe what plea offer the United States allegedly extended and that his attorney failed to communicate to him. Cameron gives no details about the alleged offer, such as what offense he would have pled guilty to, what kind of sentence or Sentencing Guidelines calculations the United States would have recommended, or whether Cameron would have retained the right to appeal. Cameron has none of this information because he presents no evidence that the United States offered a plea deal in the first place. The absence of any details of any alleged plea offer, in turn, makes it impossible to evaluate whether (1) there is any reasonable probability Cameron would have accepted this unspecified "plea offer," (2) whether the Court would have accepted the plea deal, or (3) whether the judgment would have been less severe than the one ultimately imposed on Cameron.

Tellingly, even Cameron does not allege that there was a plea offer. Instead, in his "Affidavit of Fact," he states only that his attorney did not communicate any offer "that the Government might have made." Motion to Vacate at 25 (emphasis added). Thus, even Cameron does not assert that a plea offer actually existed, only that his attorney never communicated one if it did exist. Speculative allegations, however, cannot support a claim of ineffective assistance. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

Moreover, even if the United States made an offer to Cameron to plead guilty on certain terms, Cameron points to no evidence suggesting a reasonable probability that he would have accepted it. Cameron denied that he was guilty before trial, Presentence Investigation Report at ¶¶ 2, 11, 20; during trial (see Crim. Doc. 66, Trial Transcript Vol. II at 128-212); and even after trial, when Cameron continued to deny responsibility for his crime, see Sentencing Tr. at 54-65. Cameron even stated that he wanted to take the case to trial because he was dissatisfied with a previous instance where he pled guilty, id. at 60-61, further suggesting that he would not have been inclined to accept a plea offer. Cameron's claim that he would have accepted some unspecified plea offer lacks credibility because it is contrary to his course of behavior throughout the underlying criminal case. "While [Cameron's] denial of guilt surely is not dispositive on the question of whether he would have accepted the government's plea offer, it is nonetheless a relevant consideration." Osley, 751 F.3d at 1224 (citations omitted). "[Cameron's] claim that he would have pled guilty had he been properly informed is … undermined by his repeated claims of innocence." Id. In view of the record, the Court finds that Cameron has failed to present evidence that the United States made a plea offer or that there is a reasonable chance that he would have agreed to plead guilty as he now claims. Relief on Ground 1(b) is due to be denied.

## C. Ground 1(c): Counsel's Failure to Call Ms. Gornail as a Witness

Cameron faults counsel for not calling Allison Gornail – the woman in whose name he initially attempted to purchase the AK-47 – as a witness. Cameron claims that Ms. Gornail could have proven that she was the genuine purchaser of the firearm, and that

Cameron was "compelled" to complete ATF Form 4473. Motion to Vacate at 4, 23. Cameron, however, provides nothing at all from Ms. Gornail to corroborate this allegation.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[7] "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995). Therefore, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Besides, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. Notably, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Here, Cameron provides nothing to corroborate his claim that Ms. Gornail would have given favorable testimony. Since "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner,'" Johnson

_____

[7]    Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quotation marks omitted), Cameron's allegation that Ms. Gornail would have testified favorably is too speculative to warrant relief. See Tejada, 941 F.2d at 1559 (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Moreover, the record refutes any suggestion that Ms. Gornail would have persuaded the jury that she was the actual purchaser of the firearm or that Cameron was "compelled" to complete ATF Form 4473 with a false statement. Cameron himself filled out ATF Form 4473 and represented that he was the buyer or transferee of the firearm. See Trial Tr. Vol. II at 49-54; Cameron, 547 F. App'x at 944. Thus, had Ms. Gornail testified that the gun was for her, her credibility would have been undermined by Cameron's own affirmation on the ATF form that the gun was for him.[8] Nor is there a reasonable likelihood that Ms. Gornail would have convinced the jury that Cameron was "compelled" to complete ATF Form 4473, much less to make a false statement in doing so. As noted in Part III.A, Cameron was free to walk away from the transaction and any associated paperwork; no one forced him to complete the ATF Form. Cameron was convicted for lying on the form, not for filling it out. Cameron offers nothing to suggest that anybody forced him to give false or fictitious information on ATF Form 4473.

In light of the above, Cameron has failed to allege anything suggesting that counsel performed unreasonably by not calling Ms. Gornail as a witness, or that counsel's failure to do so prejudiced him. As such, relief on Ground 1(c) is due to be denied.

---

[8]    Additionally, the evidence established that Ms. Gornail knew very little about the firearm, whereas Cameron was much more knowledgeable, and it was Cameron who was paying for the weapon.

**D.  Ground 1(d): Counsel's Failure to Object to the Admission of Evidence**

In Ground 1(d), Cameron claims that counsel gave ineffective assistance because he "did not object to any of the submissions of evidence." Motion to Vacate at 4. Except for the details of Cameron's prior domestic battery conviction, id. at 23, Cameron does not identify what evidence counsel should have objected to or on what grounds.

The record refutes Cameron's claim. Contrary to Cameron's allegation, counsel did object to the introduction of the facts regarding Cameron's battery conviction. Trial Tr. Vol. II at 170-76. Counsel argued that because Cameron admitted he had been convicted of a battery, and because he was only challenging whether he knew it was a domestic battery, "it's irrelevant and overly prejudicial to get into the details of the battery because nobody can test it." Id. at 171. In any event, the Eleventh Circuit explained that evidence regarding certain details of the prior offense was relevant and properly admitted because it was necessary to show that Cameron knew that his prior conviction involved a domestic battery. Cameron, 547 F. App'x at 947-49. Thus, to the extent Cameron complains that counsel failed to object to the admission of evidence regarding the prior conviction, the record contradicts the allegation. Moreover, even if counsel had failed to object, it would not have prejudiced Cameron because the evidence was properly admitted.

To the extent Cameron complains that counsel failed to object to the admission of other unspecified evidence, this claim is too obscure to warrant relief. Vague, speculative, or unsupported allegations of ineffective assistance do not support so much as an evidentiary hearing. Tejada, 941 F.2d at 1559. As such, relief on Ground 1(d) is due to be denied.

**E. Ground 2: Whether the Court erred by not giving the jury a limiting instruction regarding the details of his prior conviction**

Cameron claims that the "Court erred in not giving an [sic] jury instruction that would not prejudice the Petitioner in regards to his prior conviction." Motion to Vacate at 5. Cameron also suggests that the Court should have instructed the jury on his theory that he was coerced, compelled, or entrapped into completing the ATF Form. See id. at 5, 17-18.

On review of the record, the Court determines that Cameron has procedurally defaulted these claims. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001)). Cameron could have argued on direct appeal that the Court erred in not issuing appropriate jury instructions, but he did not do so.[9] As such, Cameron cannot raise these claims for the first time on collateral review.[10] Therefore, relief on Ground 2 is due to be denied.

---

[9] A petitioner can avoid a procedural default either by showing (1) cause for and prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (quotation omitted). Cameron has not claimed or explained how either exception applies.

[10] The record also refutes the claim that the Court did not issue a limiting instruction regarding Cameron's prior conviction. The Court instructed the jury as follows:

> You have been told that the Defendant previously has been convicted of a misdemeanor criminal offense. This conviction has been brought to your attention only to allow you to assess whether the elements of the offense charged against the Defendant in the indictment have been established. The fact that the Defendant was previously found guilty of another crime does not mean that he committed the crime for which he is on trial here. You must not

**F. Amended Motion to Vacate**

In the Amended Motion to Vacate, Cameron states generally that he was asked during a side bar whether he had acquired information about his criminal history that would prove he had researched his ability to purchase a firearm, but that his "attorney disagreed to evidence." Amended Motion to Vacate at 4. Cameron adds that his "attorney never discussed things" with him, and that he "feel[s] [counsel] only pushed what he thought relevant." Id.

The only sidebar that resembles what Cameron is referring to occurred during cross-examination. The prosecutor was questioning Cameron about whether he had ever researched his criminal record, and Cameron claimed that he had sought out the police report of his 2004 domestic battery offense. Trial Tr. Vol. II at 196-98. The prosecutor was preparing to publish part of the police report when the Court held a sidebar. Id. at 198-99. During the sidebar, defense counsel tried to limit publication of the police report to its relevant parts – i.e., the first page of the report only, where there was a reference to the domestic nature of the battery – and to prevent the jury from seeing any part of the report that described the facts of the battery itself. See id. In other words, defense counsel was trying to prevent the jury from seeing or reading anything that might unduly prejudice his client in their eyes. Thus, to the extent Cameron complains that counsel "disagreed to evidence," the Court finds that counsel was trying protect his client by limiting the

_____

consider this prior conviction for any purpose other than to establish the existence of the prior conviction.

Final Jury Instructions at 14.

admission of damaging evidence. As such, the record does not support any claim of ineffective assistance.

To the extent Cameron otherwise complains about counsel's performance, his claim is too vague and unspecific to support relief. See Tejada, 941 F.2d at 1559. As the Court explained in Part III.A, supra, counsel pursued what was likely the best defense he could muster. The record does not support any allegation that counsel's performance at trial was objectively unreasonable, so as to amount to ineffective assistance under Strickland. As such, relief under the Amended Motion to Vacate is due to be denied.

## IV.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Cameron seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Cameron "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Antwan Cameron's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Civ. Doc. 1, Motion to Vacate) and Amended Motion to Vacate (Civ. Doc. 10, Amended Motion to Vacate) are **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Antwan Cameron, and close the file.

3. If Cameron appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of August, 2017.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner

21